IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Magistrate Judge Kathleen M. Tafoya**

Civil Action No. 14–cv–00882–KMT

ROSS DEPORTER,

      Plaintiff,

v.

CREDIT BUREAU OF CARBON COUNTY d/b/a COLLECTIONCENTER, INC.,

      Defendant.

---

## ORDER

---

      This matter is before the court on Plaintiff Ross Deporter's "Motion for Partial Summary Judgment." (Doc. No. 18, filed Jan. 5, 2015.) For the following reasons, Plaintiff's Motion is GRANTED in part and DENIED in part.

## PROCEDURAL HISTORY

      On March 26, 2014, Plaintiff initiated this action by filing his Complaint. (*See* Compl., Doc. No. 1.) Plaintiff's Complaint asserts a single claim alleging various violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* (*Id.* at 4-6.) Defendant Credit Bureau of Carbon County d/b/a CollectionCenter, Inc. filed its Answer on April 21, 2014. (*See* Answer, Doc. No. 4.)

      Plaintiff filed his Motion for Partial Summary Judgment on January 5, 2015. (*See* Mot.) Defendant filed its Response on February 9, 2015 (Doc. No. 21) and Plaintiff filed his Reply on

February 23, 2015 (Doc. No. 22).  Accordingly, this matter is ripe for the court's review and

ruling.

## STATEMENT OF FACTS

At some unspecified time, Plaintiff incurred a debt for medical services (the "Debt").

(Compl., ¶ 13; Answer, ¶ 13.)  After the Debt went into default, it was placed with Defendant by

the original creditor(s).  (Compl. ¶ 14; Answer ¶ 14.)  On January 15, 2014, Defendant, through

the law firm Edmonds, Russell & Logue (the "Collection Firm"), sent Plaintiff a letter (the

"January 15 letter") stating that the "Total Due" on the Debt was $408.71 and that if Plaintiff

failed to resolve the matter, a civil action may be commenced against him.[1]  (Mot., Ex. 1.)

On February 26, 2014, Plaintiff called Defendant at the phone number featured in the

January 15 letter and spoke with one of Defendant's representatives.  (Mot., Ex. 2.)  Defendant's

representative informed Plaintiff that the balance of the Debt was $462.75.  (*Id.* at 3:15.)  The

representative further stated that the Debt was made up of several smaller obligations—an

account for $186.21 owed to Colorado Anesthesiologists, two accounts owed to Frontier

Emergency Physicians for $26.39 and $13.65, and an account for $236.50 owed to Poudre

Valley Health Systems.  (*Id.* at 3:15-20.)  When Plaintiff mentioned that the Letter stated a total

due of $408.71, not $462.75, Defendant's representative informed him that the discrepancy

between the total reflected in the January 15 letter and the balance she quoted him over the

---

[1] The January 15 letter further provided that "[n]o such civil action will be commenced prior to the expiration of thirty (30) day timeframe referenced on the back [of the letter]."  (Mot., Ex. 1.) Although Plaintiff has not submitted the back of the January 15 letter, the court presumes this timeframe is the thirty days a consumer has to dispute the validity of a debt.  *See* 15 U.S.C. § 1692g(a)(4), (b).

phone was due to the fact that "the attorney signed the letter, which is a $50 charge." (*Id.* at 4:4-9.)

The basis for the imposition of this $50 attorney fee charge is a "Treatment Agreement and Conditions of Service" form (hereinafter "Conditions of Service") Plaintiff apparently signed before receiving treatment at the Medical Center of the Rockies.[2] (Mot., Ex. 11.) That form provides that "the account is due and payable upon my discharge" and that should the account "be referred to any attorney for collection, I agree to pay reasonable attorney fees, costs, and collection expense, including the attorney fees incurred by the collection agency." (*Id.*)

Defendant's representative offered to settle the Debt for $380.20, which Plaintiff paid. (*Id.* at 4:7-15.) On June 30, 2014, Defendant sent Plaintiff a receipt for his payment (the "June 30 receipt"). (Mot., Ex. 8.) The June 30 receipt indicated that Plaintiff's payments were applied to accounts related to medical treatment for Plaintiff's daughter, which were incurred several years prior in 1997 and paid in 1999. (*Id.*)

## LEGAL STANDARDS

### A.      Summary Judgment Standard

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works, Inc. v. City & County of Denver*,

---

[2] The Medical Center of the Rockies appears to be part of the Poudre Valley Health System. (Mot. at 16.)

36 F.3d 1513, 1518 (10th Cir. 1994) (citing *Celotex*, 477 U.S. at 325). The nonmoving party

may not rest solely on the allegations in the pleadings, but must instead designate "specific facts

showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see also* Fed. R. Civ. P.

56(c). A disputed fact is "material" if "under the substantive law it is essential to the proper

disposition of the claim." *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir.1998)

(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute is "genuine" if the

evidence is such that it might lead a reasonable jury to return a verdict for the nonmoving party.

*Thomas v. Metropolitan Life Ins. Co.*, 631 F.3d 1153, 1160 (10th Cir. 2011) (citing *Anderson*,

477 U.S. at 248).

When ruling on a motion for summary judgment, a court may consider only admissible

evidence. *See Johnson v. Weld County, Colo.*, 594 F.3d 1202, 1209-10 (10th Cir. 2010). The

factual record and reasonable inferences therefrom are viewed in the light most favorable to the

party opposing summary judgment. *Concrete Works*, 36 F.3d at 1517. At the summary

judgment stage of litigation, a plaintiff's version of the facts must find support in the record.

*Thomson v. Salt Lake Cnty.*, 584 F.3d 1304, 1312 (10th Cir. 2009). "When opposing parties tell

two different stories, one of which is blatantly contradicted by the record, so that no reasonable

jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a

motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007); *Thomson*, 584 F.3d

at 1312.

**B.     *FDCPA and Least Sophisticated Consumer Standard***

Congress enacted the FDCPA to "eliminate abusive debt collection practices by debt

collectors, to insure that those debt collectors who refrain from using abusive debt collection

4

practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).  The Act provides a civil cause of action against any debt collector who fails to comply with its requirements.  *See* 15 U.S.C. § 1692k(a).  In addition, the FDCPA does not typically require a plaintiff to prove that a debt collector acted intentionally when it violated the act and, as a result, it is often described by courts as a strict liability statute.  *Johnson v. Riddle*, 305 F.3d 1107, 1122 n. 15 (10th Cir. 2002) (listing cases); *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1190 (11th Cir. 2010).

The FDCPA forbids a variety of conduct:

> The substantive heart of the FDCPA lies in three broad prohibitions.  First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." § 1692d.  Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." § 1692e.  Third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt."  § 1692f.

*Riddle*, 305 F.3d at 1117.

To establish a violation of the FDCPA, Plaintiff must show that (1) he is a "consumer" within the meaning of 15 U.S.C. § 1692a(3); (2) the Debt arises out of a transaction entered into primarily for personal, family, or household purposes, 15 U.S.C. § 1692a(6); (3) Defendant is a "debt collector" within the meaning of 15 U.S.C. § 1692a(6); and (4) Defendant, through its acts or omissions, violated a provision of the FDCPA.  There is no dispute that Plaintiff is a consumer, the Debt qualifies as a debt under the FDCPA, and Defendant is a debt collector under the FDCPA.  Thus, to prevail, Plaintiff need only show that Defendant violated a provision of the FDCPA.

In his Complaint, Plaintiff alleges that Defendant violated 15 U.S.C. §§ 1692e, 1692g, and 1692f of the FDCPA. When deciding such claims, courts have used a "least sophisticated consumer" standard to determine whether a debt collector's representations were false, deceptive, misleading, unfair, or unconscionable. *See Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993) (listing cases). The least sophisticated consumer standard ensures protection to all "consumers, even the naive and the trusting, against deceptive debt collection practices, and . . . protects debt collectors against liability for bizarre or idiosyncratic interpretations of collection notices." *Id.* at 1320. At least five courts of appeal have applied the least sophisticated consumer standard to alleged violations of § 1692e and § 1692f. *See, e.g., LeBlanc*, 601 F.3d at 1194; *Lesher v. Law Offices of Mitchell N. Kay, PC*, 650 F.3d 993, 1002 (3d Cir. 2011); *Hartman v. Great Seneca Fin. Corp.*, 569 F.3d 606, 612 (6th Cir. 2009); *Donohue v. Quick Collect*, Inc., 592 F.3d 1027, 1033 (9th Cir. 2010); *Evory v. RJM Acquisitions Funding, LLC*, 505 F.3d 769, 774 (7th Cir. 2007) (using the "unsophisticated consumer" standard).

The Tenth Circuit has not expressly adopted this standard, but it has, in an unpublished opinion, "applied an objective standard, measured by how the least sophisticated consumer would interpret the notice received from the debt collector." *Ferree v. Marianos*, 129 F.3d 130, 1997 WL 687693, at *1 (10th Cir. Nov. 3, 1997) (internal quotation marks omitted); *see also Fouts v. Express Recovery Servs., Inc.,* ---, F. App'x ----, 2015 WL 427425, at *3 (10th Cir. Feb, 3, 2015) (briefly discussing the "least sophisticated consumer" standard). Accordingly, because the FDCPA is a remedial statute that "should be construed liberally in favor of the consumer," *Riddle*, 305 F.3d at 1117, the court will apply the least sophisticated consumer standard to Plaintiff's claims.

As an additional matter, the court notes that the material facts in this case are undisputed. Neither party has addressed the issue of whether the court may resolve claims under sections 1692e and 1692g as a matter of law where the underlying facts are not in dispute, or whether such claims are the province of the jury.[3]  "For claims alleging violations of section 1692g, the majority of courts that have considered this issue have determined that [whether a collection letter would mislead the least sophisticated consumer] is a question of law for the court to decide."  *Kalebaugh v. Berman & Rabin, N.A.,* 43 F. Supp. 3d 1214, 1222 (D. Kan. 2014) (collecting cases).

A closer question is whether claims arising under section 1692e may be resolved as a matter of law where the underlying facts are not in dispute.  "The Second, Fourth, and Ninth Circuits have determined that the question whether a communication is false and deceptive in violation of section 1692e is a question of law for the Court."  *Kalebaugh,* 43 F. Supp. 3d at 1222 (collecting cases).  However, "the Fifth, Sixth, Seventh, and Eleventh Circuits have come to the opposite conclusion, finding that this determination is a question of fact for the jury."  *Id.* (collecting cases).  However, "even the courts adopting [the latter] view have explained that not all cases require a jury trial if material facts are not disputed and the court is able to decide the case as a matter of law based on the language of the collection letter."  *Id.* (citing *Kuehn v.Cadle Co., Inc. ,* 335 F. App'x 827, 830 (11th Cir. 2009); *Evory v. RJM Acquisitions Funding L.L.C.,* 505 F.3d 769, 776 (7th Cir. 2007)).

---

[3] The court need not determine whether it is permitted to resolve Plaintiff's section 1692f(1) claim as a matter of law.  At this juncture, as discussed *infra,* the court has only determined that Plaintiff is *not* entitled to summary judgment on this claim.

Here, as already mentioned, the material facts in this case are not disputed and Plaintiff's section 1692e and 1692g claims only require a review of the January 15 letter to determine whether it violates, or alternatively, satisfies sections 1692e and 1692g.  Because the parties have not addressed this issue, the court follows *Kalebaugh* and finds that it may determine whether the January 11 2015 letter violated sections 1692e and 1692g as a matter of law.  *See Kalebaugh,* 43 F. Supp. 3d at 1223 (concluding that the Tenth Circuit would find that claims under both section 1692g and 1692e may be resolved as a matter of law where the underlying material facts are not otherwise disputed).

## ANALYSIS

### A.   *Vicarious Liability of Defendant for the Collection Firm's Conduct*

As a threshold matter, Plaintiff acknowledges that the January 15 letter, which constitutes the factual basis for all of his FDCPA claims, was actually sent to Plaintiff by the Collection Firm, rather than by Defendant.  Nevertheless, Plaintiff argues that Defendant may be held vicariously liable for the actions of the Collection Firm.

Although the FDCPA itself is silent on the issue of vicarious liability, federal courts have recognized that "[d]ebt collectors employing attorneys or other agents to carry out debt collection practices that violate the FDCPA are vicariously liable for their agent's conduct." *Martinez v. Albuquerque Collection Servs., Inc.,* 867 F. Supp. 1495, 1502 (D.N.M. 1994); *Fox v. Citicorp Credit Servs., Inc.,* 15 F.3d 1507, 1513 (9th Cir. 1994).  Defendant does not dispute that it meets the definition of a debt collector under section 1692a(6).  (*See* Compl. ¶ 9; Answer ¶ 9.) Indeed, Defendant does not dispute that it may be held liable for the Collection Firm's Conduct.

Accordingly, the court agrees that Defendant may be held vicariously liable for the actions of the Collection Firm.

**B.**     ***Whether Defendant violated the FDCPA by Failing to Accurately Disclose the Amount of the Debt***

Plaintiff argues that Defendant violated sections 1692e and 1692g of the FDCPA by falsely representing the amount of the debt in the January 15 letter.   Specifically, Plaintiff argues that the undisputed facts show that Defendant failed to correctly disclose the amount of the debt because the "Total Due" in the January 15 letter did not include the $50 attorney fee charge and because the January 15 letter did not state that Defendant was collecting interest and attorney fees.

Section 1692g provides that in either its initial communication with a consumer regarding the collection of a debt, or no later than five days thereafter, a debt collector shall send the consumer written notice containing, *inter alia,* "the amount of the debt."  15 U.S.C. § 1692g(a)(1).  Further, the FDCPA specifically prohibits false representations about the "character, amount, or legal status of any debt."  15 U.S.C. § 1692e(2)(A).  Thus, in a validation letter, a debt collector must state the total amount of the debt, not merely some portion thereof, on the day the letter is sent.  *See Miller v. McCalla, Raymer, Padrick, Cobb, Nichols, and Clark, L.L.C.,* 214 F.3d 872, 875-76 (7th Cir. 2000).

**1.**     ***Failure to Include $50 Attorney Fee Charge in the January 15 Letter***

The court first finds that, by not incorporating the $50 attorney fee charge in "Total Due" featured in the January 15 letter, Defendant failed to accurately state the amount of the debt. Defendant's account notes show that this fee was incurred when the Collection Firm reviewed and signed the letter on January 14, 2014.  (Mot., Ex. 10.)  However, the letter was not actually

sent until the following day, February 15, 2014.[4]  (Mot., Ex. 1.)  Therefore, the January 15 letter

did not accurately state the amount of the Debt on the day it was sent.

Further, in order to uncover the actual balance of the Debt, Plaintiff was forced to call the

1-800 number featured in the January 15 letter.  Several decisions have explicitly disapproved of

this practice.  *Chuway v. Nat'l Action Fin. Servs., Inc.,* 362 F.3d 944, 947 (7th Cir. 2004); *Miller,*

214 F.3d at 876.  Accordingly, the court finds that Defendant violated section 1692g(a)(1) by

failing to accurately disclose the amount of the Debt in the January 15 letter and that Plaintiff is

entitled to summary judgment as to liability only on this claim.

### 2.    *Failure to State that the Debt was Accruing Interest*

A closer call is whether Defendant also violated section 1692g(a)(1) by failing to state

interest was accruing on the Debt.  A number of decisions have held that a validation letter

violates the FDCPA unless it states the total amount due as of the date the letter is sent and also

discloses whether the amount of the debt will increase due to interest.  *See Dragon v. I.C. Sys.,*

*Inc.,* 483 F. Supp. 2d 198, 203 (D. Conn. 2007); *Jones v. Midland Funding, LLC,* 755 F. Supp.

2d 393, 397-98 (D. Conn. 2010); *Marucci v. Cawley & Bergmann, LLP,* --- F. Supp. 3d ----,

2014 WL 7140496, at  *5-7 (D.N.J. Dec. 15, 2014); *Smith v. Lyons, Dought, & Veldhuius, P.C.,*

No. 07-5139, 2008 WL 28885887, at *6 (D.N.J. July 23, 2008); *Ivy v. Nations Recovery Ctr.,*

*Inc.,* No. 2:12-cv-037, 2012 WL 2049387, at *1-2 (E.D. Tenn. June 6, 2012); *Stonecypher v.*

*Finkelstein Kern Steinberg & Cunningham,* No. 2:11 cv-13, 2011 WL 3489685, at *5 (E.D.

Tenn. Aug. 9, 2011); *Jackson v. Aman Collection Serv. Inc.,*  No. IP 01-01000-C-T/K, 2001 WL

---

[4] The court would find that Defendant violated section 1692g even if the January 15 letter had
been sent out the same day.  Because the Collection Firm necessarily reviewed the January 15
letter before it was sent out, the letter should have included the $50 charge.  Indeed, there is no
reason this amount could not have been included in anticipation of the Collection Firm's review.

1708829, at *3 (S.D. Ind. Dec. 14, 2001). *See also Miller,* 214 F.3d at 875 (7th Cir. 2000) (holding that a debt collector must "state the total amount due—interest and other charges as well as the principal—on the date the dunning letter was sent" and fashioning a "safe harbor" formula that explicitly deals with the accrual of interest).

Other courts, however, have taken the opposite position that the section 1692g(a)(1)'s requirement that an initial communication disclose "the amount of the debt" does not imply an obligation to disclose that interest is accruing—instead, these cases hold that the FDCPA only requires that a validation letter state the total amount of the debt (including accrued interest and any other charges) as of the date the letter is sent. *See, e.g., Bodine v. First Nat. Collection Bureau, Inc.,* No. CIV.A. 10-2472 MLC, 2010 WL 5149847, at *2 (D.N.J. Dec. 13, 2010); *Adlam v. FMS,* No. 09 Civ. 9129(SAS), 2010 WL 1328958, at *3 (S.D.N.Y. Apr. 5, 2010); *Pifko v. CCB Credit Servs.,* No. 09-CV-03057 (JS)(WDW), 2010 WL 2771832, at *3-4 (E.D.N.Y. July 7, 2010); *Avila v. Riexinger & Assocs., LLC,* No. 13 CV 4349(RJD)(LB), 2015 WL 1731542, at *7 (E.D.N.Y Apr. 15, 2015); *Schaefer v. ARM Receivable Mgmt., Inc.,* No. 09-11666-DJC, 2011 WL 2847768, at *5 (D. Mass. July 19, 2011). The Tenth Circuit has not specified the precise information a debt collector must set forth to satisfy section 1692g(a)(1)'s requirement to state the "amount of the debt."

The court is reluctant to lay down a bright-line rule that section 1692g(a)(2) requires a debt collector seeking to collect an interest-accruing debt to affirmatively disclose that the debt may increase due to interest or other charges. However, under the specific undisputed facts of this case, the court finds that Defendant's failure to do so was misleading in violation of section 1692e(a)(2). More specifically, Defendant does not dispute that the original creditors on the

accounts comprising the Debt never collected or attempted to collect interest from Plaintiff.

Thus, Plaintiff did not have any prior notice that the amount of the Debt was likely to change due

to accruing interest.

As such, this case is distinguishable from nearly all of the cases finding that the FDCPA

does not impose a duty to inform the consumer that the debt is accruing interest.  More

specifically, in those decisions, the debt at issue was credit card debt; thus, those decisions

distinguished the line of cases finding an affirmative duty to disclose the accrual of interest

because "even the most unsophisticated consumer would understand that credit card debt accrues

interest."  *See, e.g., Weiss v. Zwicker & Assocs., P.C.,* 664 F. Supp. 2d 214, 217 (E.D.N.Y.

2009); *Avila,* 2015 WL 1731542, at *6; *Schaefer,* 2011 WL 2847768, at *5; *Pifko,* 2010 WL

2771832, at *3; *Adlam*, 2010 WL 1328958, at *3.

Moreover, the January 15 letter framed the amount of the Debt as "Total Due," rather

than "outstanding balance" or "current balance."  Further, the "Total Due" did not have an "as

of" date, which might have signaled to Plaintiff that the Debt would increase if not paid in full

within a certain amount of time.  Accordingly, under the circumstances, the least sophisticated

consumer, who is both gullible and naive, might have believed that he could pay the debt in full

by remitting the sum of principal and interest stated as the "Total Due" in the January 15 letter at

any time after he received that letter.  *Smith,* 2008 WL 2885887, at *6; *Dragon,* 483 F. Supp. 2d

at 203.  Such a belief would be incorrect because the total amount of the debt was subject to

periodic adjustment by Defendant due to the accrual of interest.  Accordingly, the court finds that

the letter violated section 1692e(2)(A) by failing to state that the Debt was accruing interest.

*Dragon ,* 483 F. Supp. 2d at 203.  Therefore, the court finds that Plaintiff is entitled to summary

judgment in his favor on this claim as to liability only.

**C.      *Whether Defendant Violated the FDCPA by Aggregating Multiple Accounts***

Plaintiff argues that Defendant violated the FDCPA by aggregating the various accounts

into one balance.  Defendant's Response does not address this claim whatsoever.  For the

following reasons, the court agrees with Plaintiff.

In *Smith v. American Revenue Corp.,* No. 2:04-CV-00199-PRC, 2005 WL 1162906, at

\*5-8 (N.D. Ind. May 16, 2005), the court found that a debt collector violated section 1692e of the

FDCPA by summarizing debts owed in a collection letter as "various accounts" totaling

$1,299.63 and failing to itemize the accounts subject to the collection letter.  The court found

that the letter was "patently confusing on its face" because an unsophisticated consumer would

be "unable to determine either the identity of the creditors or the amount owed to the specific

creditors." *Id.* at \*5.

Here, as in *Smith,* the court finds that the January 15 letter violated section 1692e because

it was misleading and misrepresented the character of the debt.  Although the January 15 letter

included a "Total Due" of $408.71, the facts show that the Debt was actually comprised of four

different accounts from three different creditors.  In fact, the January 15 letter is more misleading

than the letter considered by the *Smith* court; while the *Smith* letter at least acknowledged that it

sought to collect on "various accounts," the January 15 letter does not indicate in any way that

the "Total Due" is actually comprised of more than one account.

The court rejects any notion that Plaintiff was obligated to remember the identities of his

creditors and the amounts owed to them.  The least sophisticated consumer may very well "lose

13

bills and forget amounts of their debts and to whom the debts are owed." *Smith,* 2005 WL 1162906, at *6 (citing *Fields v. Wilber Law Firm, P.C.,* 383 F.3d 562, 566 (7th Cir. 2004)). Further, even if Plaintiff had saved the bills from the original creditors, he still could not have deduced the multiple sources of the aggregated debt, which, in turn, impaired his ability to assess the validity of the Debt. *Id.* at *6 (citing *Fields,* 383 F.3d at 566). Indeed, because Defendant began assessing interest on the various accounts after receiving them from the original creditors, Plaintiff could not have simply added the total of those individual bills to reach the "Total Due" featured in the January 15 letter.

Finally, if Plaintiff had simply elected to comply with the letter by sending the total amount due, although he would have had proof that he paid the "Total Due" featured in the January 15 letter, because Defendant failed to itemize the accounts included in that total, he would have no proof of which debts should have been paid by the collector with the funds he provided. Moreover, in the event that Plaintiff was unable to pay off the entire balance of the Debt, he could not elect to pay a certain account—such as the account that was subject to the Conditions of Service's attorney fees provision—to the exclusion of others.

Accordingly, because the January 15 letter sent to Plaintiff requests payment of a lump sum "Total Due" without identifying any of the original creditors or the amounts owed on those accounts, the letter is confusing on its face and misrepresents the character of the debt. As a consequence, the court finds that that the undisputed facts show that Defendant violated section 1692e(a)(2) of the FDCPA. Therefore, the court finds that Plaintiff is entitled to summary judgment as to liability only on this claim.

**D.      *Whether Defendant Violated the FDCPA by Sending Plaintiff the June 30 Receipt***

Plaintiff argues that Defendant violated the FDCPA by sending him the June 30 receipt, which incorrectly stated that his payment was applied to an account regarding medical services for his daughter that was previously paid in 1999, rather than to the Debt.   Defendant argues that this error did not violate the FDCPA because it occurred after the Debt had already been paid and therefore was not a false, deceptive, or misleading representation made "in connection with the collection of a debt."

The court agrees with the thrust of Defendant's argument, which is essentially that the receipt's erroneous representation was immaterial.  At least three circuits have held that false statements must be material in order to be actionable under the FDCPA.  *Donahue v. Quick Collect, Inc.,* 592 F. 3d 1027, 1033 (9th Cir. 2010); *Hahn v. Triumph P'ship, LLC,* 557 F.3d 755, 758 (7th Cir. 2009); *Miler v. Javicth, Block & Rathbone,* 561 F.3d 588, 596-97 (6th Cir. 2009).  In addition, the Tenth Circuit, in considering a claim under section 1692g, stated that the "FDCPA does not result in liability for every statement later alleged to be inaccurate, no matter how small or harmless."  *Maynard v. Cannon,* 401 F. App'x 389, 397 (10th Cir. 2010).  Materiality, is assessed in light of the purpose of the FDCPA, which is to "provide information that helps consumer to choose intelligently, and by definition, immaterial information neither contributes to that objective (if the statement is correct) nor undermines it (if the statement is incorrect)."  *Hahn,* 557 F.3d at 757-58.  Thus a false statement is material if it would impact the least sophisticated consumer's decisions with respect to the debt.  *See id.*

Plaintiff argues that the least sophisticated consumer would have reasonably believed that he was duped into paying an old debt, would have also believed that he still owed the "Total

Due" referred to in the January 15 letter, and thus may have been deceived into sending additional funds to Defendant.  However, at the time the June 30 receipt was issued, Plaintiff had already decided to settle the Debt.  Thus, the erroneous representation contained in the June 30 receipt had no impact on Plaintiff's decision to pay, dispute, or take other action with respect to the Debt.  Moreover, the court cannot agree that the least sophisticated consumer would forgo a basic inquiry into this blatant mistake and simply remit an additional payment to Defendant. *Hudspeth v. Capital Mgmt. Servs.,* No. 11-cv-03148-PAB-MEH, 23013 WL 674019, at *4 (D. Colo. Feb. 25, 2013) (citing *Wahl v. Midland Credit Mgmt., Inc.,* 556 F. 3d 643, 645-46 (7th Cir. 2003)) (The least sophisticated consumer is not a "dimwit").  Notably, Plaintiff has not submitted any evidence as to the steps he took after receiving the receipt or how it was resolved by Defendant.

Accordingly, the court finds that because Plaintiff received the receipt only after he already settled the Debt, the misrepresentation included therein was immaterial.  Therefore, the court finds that Plaintiff has failed to demonstrate that he is entitled to judgment as a matter of law on this claim.

**E.    *Whether Defendant Violated the FDCPA by Collecting Attorney Fees***

Plaintiff argues that Defendant violated section 1692f(1) by charging Plaintiff for attorney fees that it did not actually incur.  The court disagrees.

Section 1692f(1) prohibits the "collection of any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).  Plaintiff admits that by signing the Conditions of Service, he agreed to pay on the Poudre Valley

16

Health Systems account "reasonable attorney fees, costs, and collection expenses, including attorney fees incurred by the collection agency." (Mot., Ex. 11.)  Further, Plaintiff does not dispute that Defendant hired the Collection Firm to collect the Debt; that the Collection Firm drafted, reviewed and signed the January 15 letter for this purpose; or that the $50 fee charged by the Collection Firm was reasonable.

Instead, Plaintiff argues that Defendant did not actually incur any attorney fees because the Collection Firm never actually *billed* Defendant for this service, but instead directly charged Plaintiff by adding a $50 charge to the Debt.  The court rejects this argument.  Although Plaintiff's Motion cites to several cases holding that a party to a contract that includes an attorney fees provision must actually incur attorney fees before the other contracting party may be held liable for those fees, none of those cases go so far as to hold that the party seeking attorney fees must actually be *billed* for those fees to have "incurred" them.  The court declines to find that Defendant did not incur any attorney fees simply because the Collection Firm did not actually send Defendant a bill for its services in reviewing and signing the January 15 letter. Indeed, there can be little doubt that Defendant would have had to pay the Collection Firm's fees in the absence of the Conditions of Service's attorney fees provision.  Accordingly, the court finds that the undisputed facts fail to demonstrate that Defendant violated section 1692f(1) by charging Plaintiff with $50 in attorney fees.

**F.    *Additional Matters***

The court addresses two additional matters.  First, the court considers the effect of its findings that Plaintiff has failed to show that Defendant violated (1) section 1692e by sending the June 30 receipt to Plaintiff and (2) section 1692f(1) by charging $50 in attorney fees.  Because

17

the undisputed facts fail to show that that these actions violated FDCPA, the court believes that Defendant is entitled to summary judgment on these claims.  However, under Rule 56(f), the court may enter summary judgment in favor of a non-movant only after giving notice and a reasonable opportunity to respond.  Fed. R. Civ. P. 56(f).  Accordingly, unless Plaintiff submits additional evidence sufficient to show that these actions somehow violated the FDCPA, the court will enter summary judgment in favor of Defendant on these claims.

Second, this order makes clear that Plaintiff is entitled to summary judgment on the remainder of his claims, but only as to liability.  Plaintiff has not requested summary judgment on the issue of damages—nor has the court otherwise reached this determination.  Accordingly, the parties will be directed to file a proposed Final Pretrial Order that addresses whether a trial will be necessary on the issue of damages.  If either party believes that a trial is necessary, the proposed Final Pretrial Order shall be catered to a trial on the issue of damages only.

**THEREFORE**, for the foregoing reasons, it is

**ORDERED** that Plaintiff's "Motion for Partial Summary Judgment."  (Doc. No 18) is **GRANTED in part** and **DENIED in part** as follows:

**(1)** Plaintiff's Motion for Summary Judgment is **GRANTED** with respect to Plaintiff's claims that Defendant **(a)** violated section 1692g(a)(1) of the FDCPA by failing to include the $50 attorney fee charge in the January 15 letter; **(b)** violated section 1692e(a)(2)(A) of the FDCPA by failing to disclose that the Debt was accruing interest; and **(c)** by aggregating multiple accounts into one "Total Due" in the January 15 letter.

**(2)** Plaintiff's Motion for Summary Judgment is DENIED with respect to Plaintiff's claims that Defendant **(a)** violated the FDCPA by erroneously representing that his payment had

been applied to an account that was already paid in 1999; and **(b)** violated section 1692f(1) of the FDCPA by collecting $50 in attorney fees.  Unless Plaintiff files a response to this order on or before **May 12, 2015** providing additional evidence in support of these claims, the court will enter summary judgment in favor of Defendant on these claims pursuant to Federal Rule of Civil Procedure 56(f).

It is further, **ORDERED** that the parties are granted an extension of time through 5:00 PM on **May 1, 2015** to file their proposed Final Pretrial Order.  The proposed Final Pretrial Order shall advise the court whether a trial on the issue of damages will be necessary.  If either party believes that a trial is necessary, the proposed Final Pretrial Order shall be catered to a trial on the issue of damages only.

Dated this 28th day of April, 2015.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge